WILLIAM NEWLOLD v. STATE.

169 So. 497.

Division B.

Opinion Filed July 16, 1935.

*George M. Okell,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant Attorney General, for the State.

BUFORD, J.—Plaintiff in Error was indicted in Dade County, Florida, and convicted of murder in the ·first degree without recommendation to mercy.

We have examined the record and find disclosed thereby only one reversible error.

The court correctly charged the jury on the questions of law but it is disclosed by the record that after the evidence had been introduced, the case had been argued by counsel and the court had charged the jury, the deputy clerk, officiating as Clerk of the Court at the trial, pursuant to directions of the trial judge, delivered to the bailiff of the jury five forms of verdicts, with directions that these forms be delivered to the jury with directions that the jury was instructed by the Court to use one of such forms of verdict in the disposition of the case. Affidavit made by the deputy clerk stated:

"That said forms were prepared under my direction upon being authorized and directed by the court to do so, and that I did not submit same to the defendant or his counsel for inspection, nor did I inform them or convey the knowledge of the intention to send out or of the sending out of these forms for the jury to use; and I have no personal knowledge that defendant or his counsel had any knowledge that said forms were being sent out to the jury; that when the jury returned with a verdict finding the defendant guilty of murder in the first degree without a recommendation of mercy, the verdict returned by the jury was on one of the forms, and the one that I gave the bailiff to give to the jury to use in the event of the jury finding defendant guilty of murder in the first degree without a recommendation of mercy; the other forms that I sent out were not brought back and delivered to me, or the clerk of the court's office; (1) And I do not know what became of the remaining forms. In preparing these forms to be used by the jury in this particular case, I drew them to be used especially in this case; that the form of the verdict to be used by the jury in said cause is in words and figures as contained in a copy thereof, marked exhibit (A) and is hereto attached and made a part of this affidavit, and that said form of verdict was on a separate sheet of paper and typewritten and that the name of William Newbold was typed in said form, and not left blank for the jury to fill in.

"Then after the jury retired to consider of the verdict in the William Newbold case, the trial judge, bailiffs and court attaches, and the defendant and his counsel remained in and about the court room until the jury returned about 2:30 or 3:00 o'clock in the morning of February 28th, 1935; that later on in the morning of February 28th, 1935, court convened and took up the case of the State of Florida

versus L. R. Cooper, charged with first degree murder; that said case was tried and the case was disposed of, and the verdict returned on the same day, to-wit, February 28th, 1935. In the L. R. Cooper case, tried on February 28, 1935, there served on the jury one J. H. Watt and he is the same J. H. Watt that also served on the jury that tried the case of State of Florida versus William Newbold, that brought in the verdict as above mentioned on February 28th, 1935.

"In the case of the State versus L. R. Cooper, I prepared forms for the jury, to be used, the same as I did in the William Newbold case, and the only difference was the name of L. R. Cooper instead of William Newbold, as in the Newbold case. The exhibit (A) hereto attached was the same as I prepared and sent out in the Cooper case, except in the Cooper case the name of L. R. Cooper appears instead of William Newbold."

One form of verdict was to be used in case the jury found defendant guilty of murder in the first degree without recommendation of mercy.

The second form was to be used by the jury upon the finding of defendant guilty of first degree murder and with recommendation to mercy. This form was as follows:

"IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT OF THE STATE OF FLORIDA, IN AND FOR DADE COUNTY. WINTER TERM, A. D. 1935.

"THE STATE OF FLORIDA v. WILLIAM NEWBOLD.

"Indictment for Murder in the First Degree.

*"Verdict*

"We, the jury, find the defendant, William Newbold, guilty of murder in the first degree and recommend him to the mercy of the Court.

"So say we all.

"―――――――――*Foreman."*

The language of the form of this verdict is such as to confuse the jury in that the form is so worded as to express the thought that the recommendation to mercy was required to be unanimous.

It developed, as is shown by the record, at the trial of another person charged with murder in the first degree on the following day after the verdict in this case was returned, that this form of verdict delivered to the jury did cause confusion. While the jury had the second case under consideration one of the jurors who had been on the jury which tried plaintiff in error in this case had the following colloquy with the court:

*"Exhibit B*

"The Court: I understand that some juryman wishes to ask a question:

"Juror Watts: Your Honor, in your instructions there last night and tonight also, in regard to that where we ask for the mercy of the Court, we had that come up out there last night, and you say if a majority of the number—

"The Court: Yes, sir.

"Juror Watts: And yet, the verdict says, 'so say we all.' We had an argument on that last night and before we take the time I would like to get an explanation of that.

"The Court: The majority recommends the mercy. The verdict is 'guilty' or 'not guilty' and 'guilty of some crime as you may find the defendant guilty of.'

"Juror Watts: Yes, sir.

"The Court: But the verdict does read that way, but it is understood to be pursuant to the instructions of the Court, that it was upon the recommendation of a majority that you find a verdict, or used the verdict which was the form whereby you recommend him to the mercy of the Court. You have one verdict without recommendation of mercy,

and you have another verdict with recommendation of mercy. You are to use the verdict that conforms to the findings of the jury. Of course, when you say here 'recommend him to the mercy of the court,' that is understood that if you do that pursuant to the instructions, that it is the verdict of a majority of the jury.

"Juror Watts: Then in that case all of those 12 men out there would not have to agree to ask for mercy.

"The Court: No. Seven will be sufficient. Seven is the majority.

"(Thereupon the Jury retired to consider of their verdict.)"

An affidavit submitted with motion for new trial made by this Juror Watt, in part, states as follows:

"That after being charged by the court as aforesaid and returning to the jury room, the bailiff delivered to the jury five forms of verdict to be used by the jury, to-wit: one form to be used by the jury in the event jury found defendant guilty of first degree murder without a recommendation of mercy, and which form the jury did use; another form to be used in the event the jury found defendant guilty of murder in first degree with a recommendation of mercy, a copy of said form being thereto attached and made a part hereof, and marked exhibit (A); likewise, a form to be used in the event the jury find defendant guilty of murder in second degree of manslaughter, and likewise, another form to be used in the event defendant was found not guilty. That said forms that were not. used were left in the jury room.

"That upon going into the jury room, the said forms were read by the jury; then arose the question did it require a majority of jurors as the court charged or require all jurors, in order to make a recommendation of mercy as

the form of verdict (Exhibit A) submitted to us says 'So say we all'. We had an argument as to which was right or wrong to follow the charge or form, or whether it required a majority of jurors, or all the jury to make a recommendation of mercy. On the same day as we returned a verdict in this case, the case of State of Florida versus S. R. Cooper, charged with first degree murder, was called for trial and tried in the same court, and before the same trial judge as in this case. I was also selected, sworn and served as a juror in said S. R. Cooper case as in this case.

"That after the jury was charged by the court and the jury retired to the jury room to consider of their verdict in said Cooper case, the bailiff in charge of the jury, as in this case, likewise submitted and delivered to the jury forms to be used by the jury as in this case, the said forms of verdict being drawn in the same manner, and same wording as in this case except in this case the name of William Newbold is typewritten in, and in the said Cooper case the name of the said defendant Cooper appeared and was typewritten in.

"In view of the argument and the confusion and uncertainty of the jury in this case as to the requirements and law arising by reason of (Exhibit A) form of verdict and not knowing and desiring to know the law and have settled as to requirements and law in order for a jury to make a recommendation and to clarify the questions raised by the jury as aforesaid in this case, the jury returned to the court room the transcript of the proceeding and what was said by the court and myself as a juror as contained in (Exhibit B) hereto attached and made a part hereof is true and correct."

Affidavits attached to the motion for a new trial also show that neither defendant nor either of his counsel had

any knowledge of the sending out of the forms of the verdict of the jury to be used by the jury; that no forms of the verdict were submitted to them or either of them and that neither they, nor either of them, had any knowledge of the court intending to send out forms of verdict to be used by the jury.

Because of the showing of confusion and uncertainty created by the form of verdict being submitted to the jury under the direction of the court, without such form having been submitted to the defendant or his counsel, and in consideration of the fact that it does appear that the form of the verdict submitted to them was such as to reasonably be expected to mislead and confuse the jury and to cause the jury to apprehend that it was necessary for all members of the jury to agree to recommend to mercy before they would be authorized to render a verdict recommending to mercy and in further consideration of the fact that it is shown that the form of the verdict so submitted did confuse the jury in this regard, we hold that the ends of justice require the reversal of the judgment and the remanding of the cause for a new trial.

It is so ordered.

Reversed and remanded.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.